UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CURLIN PENNICK III,<br><br>                 Plaintiff,<br>    v.<br><br>ERIN LYSTAD, ROBERT WEBER, AND SARA SMITH,<br><br>                 Defendants. | Case No. C17-5152-RJB-TLF<br><br>REPORT AND RECOMMENDATION<br><br>**Noted for July 6, 2018** |

In this 42 U.S.C. § 1983 civil-rights action, the defendants have filed a motion for summary judgment. Plaintiff Curlin Pennick III is incarcerated at Stafford Creek Corrections Center (SCCC). Plaintiff alleges in his amended complaint that defendants were deliberately indifferent to his medical needs when they refused to prescribe him Naphazoline eye drops and failed to refer him to an outside optometrist. Dkt. 28.

All defendants, Lystad, Weber, and Smith, now move for summary judgment. Plaintiff filed a response and brief in opposition to defendant's motion, and defendants have filed a reply brief in support of their motion. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). Defendants argue that plaintiff failed to present evidence sufficient to identify a genuine issue of material fact as to whether defendants' medical treatment constituted deliberate indifference and deprived the plaintiff of the right to not be subjected to cruel and unusual punishment under the Eighth Amendment. The undersigned agrees with defendants, and

REPORT AND RECOMMENDATION - 1

therefore recommends that summary judgment should be granted as to all claims and all defendants, and the complaint should be dismissed with prejudice.

## I. FACTS

Plaintiff is a 51-year old inmate at Stafford Creek Corrections Center (SCCC) in Grays Harbor, Washington. Plaintiff alleges that he has chronic conjunctivitis and suffers from eye pain. Previously, plaintiff was prescribed Naphazoline eye drops, also known as Visine A, for eye pain. Dkt. 41, Declaration of Curlin Pennick (Pennick Decl.) at 31, 34, 35.

The Naphazoline prescription was discontinued in 2013 by a non-party medical provider at SCCC because of concerns about punctate corneal lesions and because typically that medication is not indicated for use on a long-term basis. Dkt. 33, Declaration of Erin Lystad (Lystad Decl.) at 3. The Care Review Committee (CRC), determined the drops were not medically necessary. *Id.* Subsequently, plaintiff saw two optometrists, Dr. Wayman and Dr. Copeland, several times between 2014 and 2015. Dkt. 34-1, Counsel Decl., attachment at 65, 74–77, 81–83. The visits to Dr. Copeland between 2014 and 2016 were approved by defendant Dr. Sara Smith, M.D., the Facility Medical Director, who approved outpatient services and specialist care. Dkt. 32, Declaration of Sara S. Smith, M.D. (Smith Decl.), at 1, 4.

In November 2015, plaintiff was reissued the Naphazoline prescription. Dkt 33, Lystad Decl., at 3. However, it was again discontinued in September 2016 after an exam in which Dr. Copeland noted no concerns or complaints over plaintiff's conjunctivitis. Dkt. 34-1, Counsel Decl., attachment at 91. The prescription was again reinstated briefly in early October 2016 without an examination. *Id.* at 93. On October 19, 2016, defendant Dr. Sara Smith, M.D. ultimately cancelled plaintiff's Naphazoline prescription. Dkt. 32, Smith Decl., at 4. Dr. Smith is

REPORT AND RECOMMENDATION - 2

concerned about potential adverse effects of this medication, such as punctate keratosis on the left cornea. *Id.* at 5.

To regain the prescription, plaintiff was seen by Defendant Lystad, a Certified Physician Assistant (PA-C), in a sick call examination on November 3, 2016. Dkt. 33, Lystad Decl., at 4; Dkt. 41, Pennick Decl., at 3. During the appointment, plaintiff complained of eye pain, migraines, and sensitivity to light. *Id.*; Dkt. 33-1 at 2. The parties dispute how the formal eye examination was performed, but plaintiff describes the exam as "cursory." Dkt. 41, at 3. Defendant Lystad assessed that plaintiff's conjunctivae appeared normal. Dkt. 33, Lystad Decl., at 4. Subsequently, defendant Lystad consulted with Dr. Copeland and defendant Smith. *Id.* Dr. Copeland explained that the drops were not medically necessary, that his exam showed no objective indications of conjunctivitis, and that he gave plaintiff's complaints the benefit of the doubt. *Id.* Additionally, defendants Smith and Lystad decided that follow-up was unnecessary because plaintiff's eye pain had been addressed. *Id.*

Beginning on November 2, 2016, plaintiff submitted a series of five Health Service kites to defendant Lystad complaining of increased pain and requesting the Naphazoline prescription and an optometry referral. Dkt. 33-1 at 6-10. In the kite communications, which lasted until December 2016, defendant Lystad refused to issue the drops because of the CRC's prior determination. *Id.* Defendant Lystad also reminded plaintiff that there was no indication for an optometry referral and urged plaintiff to use alternatives like artificial tears and attend sick call for reevaluation. *Id.*

Between December 2016 and January 2017, defendant Weber, the Health Care Manager, investigated plaintiff's grievances. Dkt. 35, Declaration of Robert Weber (Weber Decl.), at 2. Defendant Weber concluded that plaintiff had access to care, denied a referral, and refused to

REPORT AND RECOMMENDATION - 3

issue the drops because they were deemed not medically necessary by medical providers. *Id.*; Dkt. 35-1 at 3. Defendant Weber urged plaintiff to continue working with providers and using sick call for reevaluation if the condition worsens. *Id.*

On February 17, 2017, plaintiff filed another health service kite to defendant Smith complaining of extreme pain due to the lack of Naphazoline drops, claiming that the CRC relied on a misdiagnosis of his condition, and requesting further investigation. Dkt. 32, Smith Decl., at 5, Dkt. 32-1 at 68. Defendant Lystad responded to the kite reiterating the CRC's decision, explaining the prescription was given in error, and letting plaintiff know that he had the option to attend sick call for reevaluation. Dkt. 33, Lystad Decl., at 4, Dkt. 33-1 at 10. Defendant Smith also explained to plaintiff that the drops were not necessary because in his last optometry visit on June 8, 2016, he made no "ocular complaints." Dkt. 32, Smith Decl., at 5, Dkt. 32-1 at 69.

## II. EVIDENTIARY ISSUES

Evidence presented in an inadmissible form during summary judgment can still be considered if it can be produced in an admissible form later at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001); FRCP 56(c)(2). Upon summary judgment, evidence submitted by affidavit "shall be made on personal knowledge, shall set forth such facts that would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FRCP 56(e), (c)(4).

First, plaintiff objects and moves to strike Exhibit 1 of Counsel's declaration containing a pleading from a prior state court lawsuit brought by plaintiff. However, plaintiff did not identify

1  which rule of evidence bars this exhibit. Furthermore, the Court need not reach a determination

2  on this objection because the evidence is immaterial to the claim before the Court.[1]

3  Second, plaintiff objects to and moves to strike a group of lines and pages of defendant's

4  motion for summary judgment on several grounds such as hearsay, lack of foundation, legal

5  conclusions, and unsupported assumptions. Plaintiff's objection is too ambiguous for the court to

6  properly consider. The plaintiff's motion to strike is denied; assertions within the defendant's

7  motion for summary judgment are supported by declarations, affidavits, and exhibits as required

8  under Federal Rule of Civil Procedure (FRCP) 56.

9  Third, plaintiff objects to portions of defendant Lystad's and defendant Smith's

10 declarations discussing conjunctivitis as hearsay or improper expert testimony. However,

11 defendants Smith and Lystad are both qualified medical practitioners, as a licensed doctor and

12 physician's assistant, respectively. Both affidavits are based on their personal knowledge,

13 education, experience, training, resources used, process of evaluation, and how they applied

14 these techniques to assess plaintiff. It appears that both would qualify as expert witnesses;

15 therefore, they may testify to other facts used to form their opinion. Fed. R. Evid. 703.

16 Finally, contrary to plaintiff's objections, a sales receipt from the SCCC store in October

17 2016 is admissible under the business record exception to the hearsay rule. Fed. R. Evid. 803(6).

III.  DISCUSSION

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact, so the moving party is entitled to judgment as a

---

[1] Exhibit 1 of Counsel's Declaration contains a copy of a complaint plaintiff filed in a prior Superior Court of Washington case. This document is immaterial to the claim before the Court because it is a medical malpractice claim filed against different health providers at SCCC. The defendants in the prior claim are non-parties here, and the prior claim rests on a different set of facts. The allegations in a prior lawsuit are not informative and have no bearing on the claim here.

1    matter of law. FRCP 56(c). In deciding whether summary judgment should be granted, the Court

2    "must view the evidence in the light most favorable to the nonmoving party" and draw all

3    inferences "in the light most favorable" to that party. *T.W. Elec. Serv., Inc. v. Pacific Elec.*

4    *Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

5        In response to a summary judgment motion, plaintiff must establish a genuine issue of

6    material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87

7    (1986). If the nonmoving party completely fails to provide proof of an essential element of his

8    case, all other facts are rendered immaterial and the movant is entitled to summary judgment.

9    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

10       A genuine dispute occurs when the evidence shows "a reasonable jury could return a

11   verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Mere

12   disagreement or the bald assertion by the nonmoving party that a genuine issue of material fact

13   exists does not preclude summary judgment. *California Architectural Building Prods., Inc. v.*

14   *Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). The adverse party may not rest

15   on allegations or denials of his pleading but must produce some probative evidence of specific

16   facts that support the complaint and establish the elements. FRCP 56(e); *see also T.W. Elec.*

17   *Serv.*, 809 F.2d at 630. The purpose of summary judgment "is not to replace conclusory

18   allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l*

19   *Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

20       To sustain a claim under 42 U.S.C. § 1983, a complaint must allege: (a) that the conduct

21   complained of was committed by a person acting under color of state law, and (b) that the

22   conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

23   of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other*

24

25

1  *grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). A plaintiff must demonstrate that each

2  defendant deprived plaintiff of a constitutional right by performing an affirmative act,

3  participating in another's affirmative act, or omitting to perform an act that the defendant was

4  legally required to do. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citation omitted).

A.    <u>Eighth Amendment Claim Regarding Medical Care</u>

The government has an obligation to provide medical care for prisoners, and the Eighth Amendment protection against cruel and unusual punishment prohibits deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Only a prison official's "deliberate indifference" to a substantial risk of serious harm constitutes a violation of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Deliberate indifference involves consideration of two elements: 1) the seriousness of the medical need and 2) the defendant's response to that need. *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1992). The former is an objective standard, while the latter is subjective and based on the defendant's actual knowledge. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

A "serious" medical need exists if the failure to treat the condition results in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference must meet three subjective elements: the official must 1) know of and disregard an excessive risk to the inmate's health, 2) be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and 3) draw the inference that a substantial risk of serious harm exists. *Farmer*, 511 U.S. at 837–38. Additionally, negligence in diagnosis or treatment and medical malpractice are insufficient to constitute deliberate indifference. *Estelle*, 429 U.S. at 105–06. Notably, a difference of opinion between prisoner and medical authorities as to the appropriate medical

treatment is insufficient to establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

B.	Qualified Immunity

Qualified immunity protects government actors from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes,* 138 S.Ct. 1148, 1152 (2018) (per curiam); *Easley v. City of Riverside,* 890 F.3d 851, 855-56 (9th Cir. 2018). Government officials are entitled to qualified immunity, unless the plaintiff "pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011) (quoting *Harlow*, 457 U.S. at 818).

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). An official's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Al-Kidd*, 131 S.Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *Vos v. City of Newport Beach,* — F.3d —, No. 16-56791, 2018 WL 2771049, Slip Op. at *8 (9th Cir. June 11, 2018). The plaintiff bears the burden of showing the constitutional rights were clearly established at the time of the incident. *Al-Kidd*, 131 S.Ct. at 2083. The court must identify precedent that was close enough to the factual context of the instant case that it would put every reasonable official on notice that taking a particular action or failing to act under these particular circumstances—at the time of the challenged act or omission—would be a violation of clearly established constitutional rights of the plaintiff. *S.B. v. County of San Diego,* 864 F.3d 1010, 1015 (9th Cir. 2017).

REPORT AND RECOMMENDATION - 8

Here, there is no genuine issue as to whether defendants violated plaintiff's clearly established constitutional rights. Precedent does not clearly establish that denying eye drops and specialist consultations to an individual with possible conjunctivitis violates the Eighth Amendment. *See generally Potter v. Deputy Attorneys under Abraham*, 304 Fed. App'x 24, 28 (3rd Cir. 2008) (determining that an Eighth Amendment claim could not be established when conjunctivitis was the only documented condition). Additionally, as discussed below, there is no genuine dispute as to the violation of an Eighth Amendment right because there are no facts to show that any of the defendants was subjectively aware of plaintiff's risk of harm. Plaintiff did not show any objective signs of extreme pain or conjunctivitis to warrant medication or a consultation with a specialist. This extra treatment was deemed not medically necessary by various medical providers and the CRC. In fact, there is evidence that continued use of the eye drops would actually harm the plaintiff because they are only intended for temporary use.

There is no genuine dispute of material fact as to whether defendants have violated plaintiff's clearly established constitutional rights, and the undersigned recommends that this Court dismiss the claims for damages as to all defendants because the defendants are entitled to qualified immunity.

C.   <u>Plaintiff is not entitled to injunctive relief.</u>

Plaintiff asserts that he was "completely denied medical care" and that defendants violated his Eighth Amendment rights when they refused to reissue his Naphazoline prescription and refer him to a specialist. Plaintiff's allegation of an eye condition does not raise a genuine issue of material fact as to a serious medical need. *See Potter*, 304 Fed. App'x at 28. Even though he continued to communicate to various defendants that he experienced eye discomfort and previously received referrals and Naphazoline, plaintiff has not presented evidence to show there has been a failure to treat the condition. Instead there is a difference of opinion between the

1  plaintiff, who is not a medical professional, and the defendants – some of whom are medical
2  professionals. Nor is there any evidence that the current treatment being offered by the
3  defendants results in further significant injury or the "unnecessary and wanton infliction of pain."

4      In addition, the subjective element of deliberate indifference is not met. As discussed
5  below, plaintiff cannot establish deliberate indifference because there is no evidence that would
6  raise a genuine dispute of material fact that any of the defendants were subjectively aware that
7  plaintiff was at risk of serious harm. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).;
8  FRCP 56(e); *Royal v. Nor-Lea Hospital District,* No. 13-748 WJ/KK, 2016 WL 10587956, Slip
9  Op. at *11-*16 (D. New Mexico 2016) (granting defendant's motion for summary judgment on
10 inmate's Eighth Amendment claims concerning an eye condition because plaintiff did not
11 establish any genuine dispute of material facts regarding deliberate indifference).

12     <u>Defendant Weber</u>
13     Defendant Weber, the Health Care Manager, investigated plaintiff's grievances,
14 interviewed plaintiff, reviewed his medical record, and determined that he had access to care.
15 Dkt. 41, Pennick Decl., at 4. Defendant Weber is not a medical professional; he relied on the
16 determinations of plaintiff's prior medical providers. Dkt. 35, Weber Decl., at 2.

17     Plaintiff maintains that defendant Weber was deliberately indifferent when he declined to
18 grant plaintiff an optometry referral after his investigation. However, the facts are insufficient to
19 raise a genuine issue as to whether defendant Weber held a subjective belief that plaintiff was at
20 risk of harm. Plaintiff claims that a genuine dispute is established because defendant Weber was
21 aware of plaintiff's complaints and medical record. This fact merely establishes the type of
22 information defendant Weber had acquired, which is not in dispute.

23
24
25

Additionally, plaintiff's characterization of the facts, stating that defendant Weber's conclusion is "automatic whitewash" is also insufficient to raise a genuine dispute. *Id.* The record shows that defendant Weber, who is not a medical professional, could not make his own medical determination. Instead, he adopted the medical providers' opinion that plaintiff would not be at risk of harm if his requested treatment was denied. Furthermore, there was no "complete denial of medical care" because defendant Weber urged plaintiff to collaborate with providers and use sick call to be reassessed at any time. *Id.*

Defendant Smith

Dr. Smith, the Facility Medical Director at the time, approved outpatient services and specialist care. Dkt. 32, Smith Decl., at 1, 4. In October 2016, defendant Smith cancelled plaintiff's Naphazoline prescription and refused to refer plaintiff to an optometrist due to lack of medical necessity. *Id.* In response to plaintiff's kite complaints, Defendant Smith emphasized that the drops and referral were not necessary because plaintiff made no "ocular complaints" in his last optometry visit on June 8, 2016. *Id.* at Exhibit 2.

Plaintiff claims that defendant Smith was deliberately indifferent when she discontinued plaintiff's prescription and refused to issue a referral. However, plaintiff does not raise a genuine issue that defendant Smith subjectively believed plaintiff was at serious risk of harm. Defendant Smith believed long-term use of drops would be adverse to plaintiff's health. Dkt. 32, Smith Decl., at 4. As a trained medical professional, Dr. Smith understood that Naphazoline drops are intended for temporary use because long-term use could result in lesions, a symptom that was observed on plaintiff. *Id.* at 4–5. Although plaintiff notified defendant Smith of his discomfort and pain, this is insufficient to establish that defendant Smith accepted such complaints and subjectively believed plaintiff was at risk of harm.

Plaintiff argues that Dr. Smith incorrectly relied on plaintiff's last optometry evaluation in June 8, 2016 to determine that the drops were not necessary. Plaintiff explains that he made no ocular complaints because he was using Naphazoline drops at the time. Even if the Court were to assume, for purposes of this analysis, the truth of Mr. Pennick's allegation that defendant Smith incorrectly relied on the June 8, 2016, optometry consult, this constitutes an allegation of negligence at most, falling short of the standard required for deliberate indifference. *See Estelle*, 429 U.S. at 105–06.

Plaintiff asserts that "common sense" indicates that defendant Smith was motivated by budget concerns. However, beyond this conclusory assertion in plaintiff's declaration, there is no probative evidence to support this theory. *See Nelson v. Prima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (holding that unsupported, conclusory, or merely speculative assertions will not create a triable issue of fact).

Defendant Lystad

Defendant Lystad, a PA-C at SCCC, assessed plaintiff in a sick call examination after his Naphazoline prescription was denied. Dkt. 33, Lystad Decl., at 4. Defendant Lystad observed "normal conjunctivae" and found no indication that plaintiff needed drops or an optometry referral. *Id.* at Exhibit 1. Defendant Lystad also responded to plaintiff's subsequent grievances and urged plaintiff to use artificial tears and attend sick call for reevaluation. *Id.* at Exhibit 2.

Plaintiff argues that defendant Lystad was deliberately indifferent to his serious medical needs when she refused his requests for a prescription and specialist. However, defendant Lystad asserts that she did not believe her refusal would cause plaintiff serious harm. Her examination yielded no indications that further treatment was needed, and she was concerned long-term use of the drops would be harmful. *Id.* at 4. She also consulted with Dr. Copeland and Dr. Smith and

in both conversations, determined that no follow up was necessary because of the lack of objective findings. *Id*.

Plaintiff alleges that defendant Lystad's examination of his eyes was "cursory." Taken in the light most favorable to the plaintiff, even if this Court assumes (for purposes of this analysis) that the exam was cursory, it does not establish that defendant Lystad subjectively believed plaintiff was at risk of serious harm. At most, the plaintiff's assertion that defendant Lystad conducted a cursory examination amounts to an allegation of negligence, which still fails to establish deliberate indifference. *See Estelle*, 429 U.S. at 105–06. Plaintiff also claims that the referral refusal was due to budgetary concerns. Yet, plaintiff provides no further evidence as required by FRCP 56(e) to support this conclusory assertion.

Plaintiff states that there is a genuine dispute as to whether he attended sick call with defendant Lystad on November 3, 2017. This fact is not disputed: plaintiff and defendant Lystad both acknowledged plaintiff's presence and complaints that day. Dkt. 33, Lystad Decl., at 4; Dkt. 41, Pennick Decl., at 3.

Defendant Lystad's prior issuance of a Naphazoline prescription in November 2015 is also insufficient to raise a genuine issue of subjective belief. The prescription was filled in November 2015 upon Dr. Copeland's recommendation and without an independent examination. Dkt. 33, Lystad Decl., at 3. Even if the Court were to assume that defendant Lystad believed plaintiff was at risk of harm in November 2015, there is no evidence that defendant Lystad held this belief in November 2016, a full year later, after personally examining plaintiff. *Id.* at 5.

Alternatively, even if the Court were to assume that defendant Lystad had actual knowledge that her actions would cause harm, the facts would fall short of deliberate indifference because defendant Lystad continued to be accessible to plaintiff for treatment. After

denying his requests, defendant Lystad suggested alternative courses of treatment like oral antihistamines, artificial tears, and cromolyn. *Id*. at 4–5. Defendant Lystad also urged plaintiff to sign up for sick call to be reevaluated for eye pain. *Id.* at Exhibit 2. Thus, defendant Lystad was not deliberately indifferent to plaintiff's ocular needs and instead offered alternative treatments. Plaintiff has shown, at most, a difference of opinion regarding treatment between the prisoner and medical authorities, which does not establish deliberate indifference. *Jackson,* 90 F.3d at 332.

Plaintiff contends that there is a genuine dispute about whether he suffers from chronic conjunctivitis. However, this is not material for purposes of summary judgment because plaintiff cannot establish the essential element that defendants were subjectively aware of his risk of harm. Regardless, plaintiff cannot testify to the medical diagnosis that his pain is caused by chronic conjunctivitis because he is not an expert medical professional. Fed. R. Evid. 701, 702.

### IV.  PRISONER LITIGATION AND REFORM ACT (PLRA) STRIKE

Defendants urge the Court to impose a strike against plaintiff by dismissing the claim as frivolous or malicious. The Prisoner Litigation Reform Act (PLRA) bars prisoners from bringing claims *in forma pauperis* status after accumulating three "strikes." 28 U.S.C. § 1915(g). A strike is imposed when a claim is dismissed on the grounds of being frivolous, malicious, or failure to state a claim. Not all unsuccessful cases qualify as a strike. *El-Shaddai v. Zamora*, 833 F.3d 1036, 1041 (9th Cir. 2016) (citing *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005)).

A claim is frivolous if it has no basis in law or fact. *Martin v. Sias*, 88 F.3d 774, 775 (9th Cir. 1996). A malicious claim is one that was filed with the "intention or desire to harm another." *Andrews*, 398 F.3d at 1121. The PLRA designation of failure to state a claim "parallels the language of the Federal Rule of Civil Procedure 12(b)(6)." *Id*. at 1121 (citation omitted). A dismissal for failure to state a claim is warranted when the allegations of the complaint, taken as

true, show that the plaintiff is not entitled to relief. *El-Shaddai*, 833 F.3d at 1043 (citation omitted). To count as a strike, a grant of summary judgment must rest on the PLRA grounds of frivolousness, maliciousness, or failure to state a claim. *See id.* at 1044.

Here, plaintiff was unsuccessful at raising a genuine issue of material fact for trial. The recommended grant of summary judgment does not rest on a PLRA enumerated ground. First, there is no indication that this claim was filed frivolously or maliciously. A prior state court case that was dismissed as frivolous has no bearing here in a federal court claim.

Additionally, the prior claim involved defendants and circumstances that are different than the case before this Court. And the decision here rests on summary-judgment evidentiary analysis of facts outside those listed in the complaint, rather than a failure to state a claim based on an analysis of the facts stated within the complaint and incorporated attachments. *See El-Shaddai*, 833 F.3d at 1044–45. The plaintiff stated a plausible claim in his pleadings; however, judgment is granted here as a matter of law because plaintiff did not present evidence sufficient to raise a genuine issue of material fact regarding qualified immunity or deliberate indifference. Therefore, the undersigned recommends that the Court decline to impose a strike.

## V.  CONCLUSION

Based on the foregoing discussion, because the defendants are entitled to qualified immunity, and the plaintiff cannot establish a genuine issue of material fact showing that he suffered from a serious medical need or that the defendants were deliberately indifferent, the undersigned recommends the Court grant defendants' motion for summary judgment to all defendants on all claims for damages and injunctive relief, and dismiss plaintiff's complaint with prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file

REPORT AND RECOMMENDATION - 15

1 objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474

2 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration

3 on **July 6, 2018**, as noted in the caption.

4   Dated this 20th day of June, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16